UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 3:18-CR-00311 (JCH) |
| | : | |
| v. | : | |
| | : | |
| RON CHRISTOPHER SPEAR-ZULETA, | : | |
| a.k.a. "CHRIS", ANINHA SPEAR-ZULETA | : | APRIL 19, 2021 |
| and MARITZA TORRES, a.k.a. "LISY" | : | |

### GOVERNMENT'S MEMORANDUM RE: *FATICO* ISSUES

The Presentence Report ("PSR") prepared in anticipation of Ron Christopher Spear-Zuleta's sentencing properly identified a Sentencing Guidelines base offense level of 20 for the crime of conviction, Interference with Commerce by Robbery, 18 U.S.C. § 1951(a). The PSR then recommended that the following enhancements should be applied to the base level:

• 2 levels because a threat of death was made, §2B3.1(b)(2)(F);

• 4 levels because victims 1 and 2 were abducted to facilitate the crime, §2B3.1(b)(4)(A);

• 1 level because a firearm and controlled substances were stolen, §2B3.1(b)(6)(A);

• 2 levels because the defendant knew or should have known that Victim 2 was a vulnerable victim of the offense due to mental condition, §3A1.1(b)(1); and

• 2 levels because the defendant supervised others in the commission of the conduct, §3B1.1(c).

The Court held an evidentiary *Fatico* hearing on February 23, 2021, to resolve those proposed enhancements.

The defendant has addressed each of the enhancements in his sentencing memorandum. See *Defendant Ron Christopher Spear-Zuleta's Sentencing Memorandum, April 14, 2021,* docket #303. He now agrees that a two-level enhancement for his leadership role, §3B1.1, is appropriate, but contests the remaining enhancements. The government also addressed the enhancements in its sentencing memorandum. See *Government's Memorandum in Aid of*

*Sentencing, April 19, 2021*, docket #315. For ease of reference, the government sets forth the same arguments in this Memorandum.

## DISCUSSION

A. Threat of death – U.S.S.G. §2B3.1(b)(2)(F)

The Sentencing Guidelines specifically call for an increase in the base offense level for robbery "if a threat of death was made." U.S.S.G. §2B3.1(2)(F). Application Note 6 states: "[T]he intent of this provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, a fear of death." *See United States v. Jennette,* 295 F.3d 290, 291 (2d Cir. 2002). Whether the defendant in fact intended to kill the victim is immaterial. "The enhancement does not require a subjective finding of the defendant's intent, nor does it require an actual finding of the level of fear instilled by the threat." *United States v. Cadotte,* 57 F.3d 661,662 (8th Cir. 1995).

As Chris Spear-Zuleta was assaulting Ashley Branham in the basement of the Woodbridge home, he threatened to kill her and threatened to kill her mother and her grandmother if she reported the crime to the police. Although he was not armed at the time, he already had physically overpowered her, choked her, and had to be restrained from further assaulting her. All this happened while she was alone in the basement of the defendant's home, without her phone or car keys, thus leaving her unable to escape or summon help. The fear that the defendants instilled caused Ms. Branham to acquiesce in the demand that she provide the co-conspirators access to her Milford home so that they could carry out the robbery.

B. Abduction – U.S.S.G. § 2B3.1(b)(4)(A)

The Sentencing Guidelines call for a four-level enhancement to the recommended guidelines range for any person who, in the course of a committing a Hobbs Act robbery, abducts

2

a victim. U.S.S.G. §2B3.1(b)(4)(A). "'Abducted' means that a victim was forced to accompany an offender to a different location." U.S.S.G. §1B1.1.

The United States Court of Appeals for the Third Circuit has identified three predicates to determine whether that standard is met:

> First, the robbery victims must be forced to move from their original position; such force being sufficient to permit a reasonable person an inference that he or she is not at liberty to refuse. Second, the victims must accompany the offender to that new location. Third, the relocation of the robbery victims must have been to further either the commission of the crime or the offender's escape.

*United States v. Reynos,* 680 F.3d 283, 286-87 (3d Cir. 2012); quoted in *United States v. Smith,* 767 F.3d 187, 190 (3d Cir. 2014).

The facts here could hardly be more on point with either the commonsense definition of "abduct" set forth in the Guidelines, or the more legalistic standard that the Third Circuit imposes. Ashley Branham unequivocally testified at the *Fatico* hearing on February 23, 2021, that Aninha Spear-Zuleta ("Aninha") summoned her to the Spear-Zuletas' Woodbridge home on November 28, 2017. Transcript, 2/23/21 (*Tr*.) at 31. Ms. Branham brought with her "Mr. Mike," a developmentally disabled man for whom she cared as part of her job responsibilities with Marrakech, Inc. *Tr*. at 27. "Mr. Mike," suffers from both dementia and autism. At the Spear-Zuletas' home, Chris Spear-Zuleta led her to the basement and "started yelling and screaming." *Tr*. at 31. When Ms. Branham said that she was leaving "[h]e told me that I wasn't going anywhere." *Id.* "He then started pushing me, he hit me, I fell back. He then tried to chock [sic] me." *Id.* It was only the intervention of his coconspirators that caused the defendant to cease his attack. The defendant then ordered one of the conspirators to take Ms. Branham's cell phones and her car keys. *Tr*. at 33. Ms. Branham stated she surrendered her keys only "[b]ecause at that moment [I] was outnumbered. It was four people against me and I didn't want anything to happen." *Tr*. at *34.*

3

After Chris Spear-Zuleta assaulted and threatened Ms. Branham and her family, he told his coconspirators to take her to the home she shared with Alan Robinson and to "take everything that belonged to Alan. Anything that he ever bought me." *Id.* Following his instructions, Aninha and the others did exactly that, taking her and "Mr. Mike" to Ms. Branham's Milford home where they held her against her will while cleaning out all of Robinson's belongings. Only after the coconspirators accomplished their goal did they return her and Mr. Mike to the defendant's Woodbridge home, where she was allowed to leave. *Tr.* at *35*.

The conspirators took Ms. Branham and Mr. Mike by threat of violence and death from her original location – the defendants' Woodbridge home – to her home in Milford and held her there as they effectuated the robbery of Alan Robinson's belongings. In any sense of the word, they abducted her and "Mr. Mike."

### C. Theft of firearm or controlled substances – U.S.S.G. §2B3.1(b)(6)(A)

Guidelines section 2B3.1(b)(6)(A) imposes an additional one-level enhancement if "a firearm … or controlled substance was taken."

Ashley Branham testified without contradiction that the defendant and her coconspirators took both a firearm and a significant quantity of narcotics from her home in an effort to recoup a drug debt that Robinson owed Chris Spear-Zuleta. *Tr.* at 38. "In the back of the closet, when they were going taking all his stuff out, they removed his laundry basket and behind that was a book bag full of cocaine." *Id.* She further testified that when she returned to the home after being released, she found that they had also taken a firearm that Robinson stored under the mattress. *Tr.* at 43. Robinson later told her that he had retrieved the stolen narcotics from the Chris Spear-Zuleta in return for giving him a Rolex watch. *Id.*

### D. Vulnerable Victim – U.S.S.G. §3A1.1(b)(1)

If a person convicted of robbery "knew or should have known that a victim of the offense was a vulnerable victim," the Guidelines call for the base offense level to be increased by two levels. U.S.S.G. §3A1.1(b)(1). One is considered to be vulnerable if he or she "(A) … is a victim of the offense of conviction and any conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to criminal conduct." U.S.S.G §3A1.1 cmt. n. 2.

As noted, when Aninha Spear-Zuleta summoned Ashley Branham to her Woodbridge home, Ms. Branham brought with her Mr. Mike, who suffers from both dementia and autism and who cannot be left alone outside his home. Ms. Branham had taken him to the Spear-Zuleta home on several prior occasions and both Chris Spear-Zuleta and Aninha knew Mr. Mike and were familiar with his disabilities. *Tr.* at 28. Throughout the ordeal, Ms. Branham was concerned for Mr. Mike's well-being and, at times, remained compliant with the defendants' demands in order to assure his safety. *Tr*. at *35*.

There is no doubt that the intended victims of the crimes were Ms. Branham and – by extension – Alan Robinson, not Mr. Mike. Nevertheless, when the defendants forced Ms. Branham and Mr. Mike to go to the Milford home so that they could carry out the robbery, Aninha Spear-Zuleta knew full well that Mr. Mike was incapable of objecting and that, even if he had, his disabilities would prevent him from thwarting the robbery or taking any other actions to disrupt the plan.

That Mr. Mike was not the principal intended victim of the robbery and abduction

5

does not relieve the defendant of liability for her conduct. The enhancement is "authorized where the offense conduct victimized a vulnerable person even though the entity directly targeted by the offense of conviction was a different person." *United States v. Kimber,* 777 F.3d 553, 565 (2d Cir. 2015) quoting *United States v. Firment,* 296 F.3d 118, 121 (2d Cir. 2002).

Nor does it matter that the defendant did not deliberately prey on the victim *because* of his vulnerability. "[I]t is sufficient that he knew or should have known of this quality when deciding to go ahead with the crime." *United States v. McCall,* 174 F.3d 47, 50 (2d Cir. 1998). The focus is not on the potential harm to which the vulnerable person might be exposed, but whether "a particular victim was likely to thwart the crime …." *Id.* In determining whether to impose this enhancement, the sentencing court should focus "on the extent of the individual's ability to protect himself from the crime." *United States v. O'Neil,* 118 F.3d 65, 75 (2d Cir. 1998).

Accepting that Mr. Mike was not the primary target of the robbery, any number of alternatives were available to the defendants to avoid victimizing a disabled man during their kidnapping and robbery. Most obviously, of course, they simply could have decided not to continue with the robbery, knowing that Mr. Mike would now be involved. Alternatively, they could have returned him to his own home before going to Ms. Branham's home to continue the robbery. Instead, knowing his disabilities and undeterred in their plan to carry out Spear-Zuleta's revenge, they chose to prolong Mr. Mike's captivity by taking him to Milford.

## CONCLUSION

The government respectfully submits that the evidence adduced at the *Fatico* hearing established each of the enhancements at issue.

LEONARD C BOYLE
ACTING UNITED STATES ATTORNEY


_____/s/_____
LEONARD C. BOYLE
ACTING UNITED STATES ATTORNEY
Federal Bar No. CT 00255
157 Church Street, 25th Floor
New Haven, CT 06510
Tel.: 203-821-3700
Email: leonard.boyle@usdoj.gov



## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2021, a copy of the foregoing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


_____/s/_____
LEONARD C. BOYLE
ACTING UNITED STATES ATTORNEY